561 So.2d 1011 (1990)
L & R LEASING COMPANY, et al.
v.
ALLSTATE INSURANCE CO., et al.
Vincent PALUMBO
v.
Karen D. ALFORD, et al.
Vincent PALUMBO, Individually and as the Widower and Surviving Spouse in Community of Glynn Palumbo and the Tutrix of the Minor Child, Angelique Palumbo
v.
Karen D. ALFORD, et al.
Nos. 89-CA-0983, 89-CA-0984 and 89-CA-0985.
Court of Appeal of Louisiana, Fourth Circuit.
May 15, 1990.
*1012 Robert N. Habans, Jr., John C. McNeese, Habans, Bologna & Carriere, New Orleans, for appellant, Vincent Palumbo.
George J. Kambur, New Orleans, for appellant, Angelique Palumbo.
John R. Flowers, Jr., Rodney J. Lacoste, Jr., Stassi, Rausch & Giordano, Metairie, for defendants/appellees.
Before KLEES, WARD and BECKER, JJ.
BECKER, Judge.
These three lawsuits were instituted for the recovery of damages allegedly sustained in a vehicular collision occurring on Chef Menteur Highway near the entrance of the Halter Marine, Inc. plant in New Orleans, Louisiana. Vincent Palumbo, individually and as the widower and surviving spouse in the community of Glynn Palumbo and tutrix of the minor child, Angelique Palumbo, sued for his own injuries and the wrongful death of his wife, Glynn Palumbo. L & R Leasing Company and Kentwood Spring Water, Inc. sued seeking recovery of the damages sustained to its vehicle. Included as defendants were the State of Louisiana through the Department of Transportation and Development, Halter Marine, Inc., Karen Alford (the driver of one of the vehicles involved), Kentwood Spring Water, Inc., Allstate Insurance Company (Ms. Alford's insurer), Hanover Insurance Company (Palumbo's insurer), and the City of New Orleans, Department of Roads and Bridges.
The accident sued upon occurred on April 7, 1981. On that day, Vincent Palumbo and his wife, Glynn Palumbo, were traveling east on Chef Menteur Highway in their 1980 Datsun when they were forced to swerve to the right and partially on to the shoulder of the highway when another vehicle, driven by defendant Karen Alford, turned into their path. The plaintiff's vehicle then turned back onto the highway, crossed into the oncoming lane of traffic and struck a Kentwood Spring Water delivery truck, injuring Mr. Palumbo and causing fatal injuries to Mrs. Palumbo.
The trial judge decided the issue of the State's liability while a jury determined all other issues. In determining liability, the jury found plaintiff, Vincent Palumbo, to be twenty-eight percent at fault; Karen Alford, twenty-four percent at fault; and Halter Marine, Inc., forty-eight percent negligent. The trial judge found the State not liable to plaintiffs as there was no defect in the shoulder of the roadway. The trial judge, in his reasons for judgment, stated,
"After listening to all of the evidence, the Court finds that the State of Louisiana through the Department of Transportation and Development did not violate the duty imposed by law to maintain the shoulder reasonably safe for the prudent motorist.
The only credible evidence presented to this Court, are the police report, the testimony of those who were present, and the photographs taken at the time of the investigation.
The Court concludes from this evidence, that the plaintiff has failed to prove that the shoulder of the highway was not reasonably safe, or that the shoulder contained a defect that created an unreasonable risk of harm."
Only the plaintiff, Vincent Palumbo, has sought appeal from the trial court's judgment. The plaintiff argues that the trial court erred in failing to hold the State through the Department of Transportation and Development strictly liable for the loose shell shoulder of the highway. Plaintiff also argues, on appeal, that the trial court abused its discretion in not allowing him to amend the pleadings during trial in order to present evidence on claims for Vincent Palumbo's lost wages and Glynn Palumbo's pain and suffering prior to death.
In order to recover under the theory of strict liability, a plaintiff must show that the thing which caused the damage was in the care or custody of the defendant, that the object had a vice or defect, i.e., some condition which occasioned an unreasonable risk of injury, and that the injury was caused by the defect. Jones v. City of *1013 Baton Rouge, 388 So.2d 737 (La.1980); Holmes v. State Through Department of Highways, 466 So.2d 811 (La.App. 3rd Cir. 1985), writ denied, 472 So.2d 31 (La.1985); Efferson v. Louisiana Department of Transportation and Development, 463 So.2d 1342 (La.App. 1st Cir.1984), writ denied, 465 So.2d 722 (La.1985).
In the present case, the plaintiff has alleged that the shoulder in question was defective because of loose shells allegedly found on the shoulder of the roadway. Palumbo argues that the loose shells caused him to lose control of his vehicle as he was exiting the shoulder and returning to the roadway. However, the trial court found that the plaintiff did not sustain his burden in proving that such a defect existed. Absent manifest error, the trial court's factual findings will not be disturbed on appeal. Arceneaux v. Dominque, 365 So.2d 1330 (La.1978).
The jurisprudence is clear that the State has primary responsibility for the maintenance of state highways, including the shoulders. L.S.A.-R.S. 48:1(11), (13); 48:21; 48:191; Robertson v. Handy, 354 So.2d 626 (La.App. 1st Cir.1977), writ denied, 356 So.2d 434 (La.1978); Willis v. State ex. real. Louisiana Department of Highways, 321 So.2d 819 (La.App. 1st Cir. 1975), writ denied, 325 So.2d 280 (La.1976). The State is required to maintain its highways and shoulders in a reasonably safe condition. It can not knowingly allow a condition to exist which is hazardous to a reasonably prudent driver. Guillotte v. Department of Transportation & Development, 503 So.2d 618 (La.App. 4th Cir. 1987). This duty extends to the protection of those people who may be foreseeably placed in danger by an unreasonably dangerous condition. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). This duty has been extended to protect those motorists who had to drive onto the shoulder because an emergency condition made travel on the main portion of the roadway hazardous, Hopkins v. Department of Highways, 167 So.2d 441 (La.App. 1st Cir.1964), writ denied, 246 La. 885, 168 So.2d 268 (1964); or who reasonably believed that conditions required them to drive onto the shoulder although no actual hazard existed, Watson v. Morrison, 340 So.2d 588 (La.App. 1st Cir. 1976), writ denied, 342 So.2d 218 (La. 1977); or who drove onto the shoulder inadvertently where there was neither knowledge nor reason to know of a defective condition that would make such action hazardous, Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979).
There is no question that the State had a duty to the plaintiff to maintain the shoulder of the highway in a reasonably safe manner. The question posed by this appeal is whether the State breached this duty. The trial court found that the State did not violate its duty to maintain the highway and shoulders. The trial judge specifically found that the plaintiff failed to prove the existence of a vice or defect, i.e. loose shells on the shoulder. A review of the trial record reveals that the trial court did not commit error in its factual findings.
Officer Wayne Tamborella of the New Orleans Police Department participated in the investigation of the accident and prepared the accident report. Officer Tamborella testified that he did not recall seeing any loose shells or gravel on the highway or shoulder. Further, on the police report, in the section entitled "Roadway Conditions," Officer Tamborella checked off "no defects." A review of the photographs presented into evidence show that the shoulder is made of well-compacted clam shells. Also, none of the parties involved in the accident testified that they saw loose shells on the highway and/or shoulder. Ms. Alford and Mr. Aucoin, the driver of the Kentwood truck, did testify to seeing a cloud of dust or smoke kicked up by Mr. Palumbo's vehicle as it exited the shoulder. However, such testimony is not probative of the existence of loose shells.
The only witness to testify as to the existence of shells was Terry Bruno, Mrs. Palumbo's nephew. However, Mr. Bruno did not appear on the scene until after the accident occurred, and after emergency vehicles had arrived. Thus, his testimony as to the existence of shells is not probative as to a defect in the highway. There are too *1014 many variances which may have caused "loose shells" on the highway after the accident. Further, the trial court, in assessing Mr. Bruno's credibility may have felt that Mr. Bruno's testimony, as decedent's nephew, was slightly biased. Such determinations of credibility of witnesses are solely within the discretion of the trier of fact, and will not be reversed absent an abuse of that discretion. Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La. 1977); Billiot v. Bourg, 338 So.2d 1148 (La.1976).
Neither did the trial judge give much weight to the testimony of plaintiff's expert witnesses. In his reasons for judgment, the trial judge explained:
"The plaintiffs called two experts, and the state called one on the issue of liability. These experts attempted to reconstruct what happened in 1981.
The Court feels that the experts were not objective, but were advocates of the cause of those who retained them. The Court feels that many of the conclusions reached by the experts, and that many of the opinions reached by the experts are without logical reason and without evidentiary basis."
The trial judge, as the trier of fact, is clearly within his discretion to accept or reject in whole or in part the testimony of expert witnesses. Considering that the evidence in the record does not support the existence of a defect in the highway shoulder, we conclude that the trial judge did not abuse his discretion in the weight given to the testimony of plaintiff's witnesses.
Plaintiff's other specification of error concerns the trial court's denial of his amendment of the pleadings during trial. During the middle of the jury trial, plaintiff sought permission from the court to amend his pleadings so as to present evidence on claims for Vincent Palumbo's lost wages and Glynn Palumbo's pain and suffering prior to death. Code of Civil Procedure article 1154 grants the trial judge the discretion to allow amendment of pleadings during trial, over opposing counsel's objection, when "the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits." However, such amendments should not be allowed if the amendments would add issues not already pled. Such amendments are allowed for the pleading of material facts for an issue pleaded only generally or as a legal conclusion. See L.S.A.-C.C.P. article 1154 Comment (c).
The amendments plaintiff sought to have made to the pleadings would have added entirely new issues. Specifically, new damage items which should have been specifically pled. Allowing such amendments would have prejudiced the defendant's case. A continuance would have had to be granted to allow defendants to prepare a defense and/or to discover more fully the substance behind plaintiffs' allegations. Further, as this matter was tried by a jury, a continuance would not have been the most efficient and least prejudicial remedy. More than likely, the jury would have had to be dismissed, and a new trial date set. In assessing the interests of equity, prejudice, and judicial economy, the trial court was correct in denying plaintiff's amendments. Further, a trial court's ruling on such matters will not be disturbed absent a manifest abuse of discretion. Strecker v. Credico Financial, Inc., 444 So.2d 783 (La. App. 4th Cir.1984). There was no abuse of discretion in the court's ruling.
Accordingly, the judgment of the trial court is hereby affirmed. All costs to be borne by plaintiff-appellant.
AFFIRMED.