749 So.2d 855 (1999)
Peter J. WALKOWIAK, Plaintiff-Appellant,
v.
Karla S. WALKOWIAK, Nee Harper, Defendants-Appellees.
No. 32,615-CA.
Court of Appeal of Louisiana, Second Circuit.
December 8, 1999.
*856 Albert E. Loomis, III, Monroe, Counsel for Appellant.
Bobby N. Underwood, Monroe, Counsel for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
GASKINS, J.
Peter J. Walkowiak appeals from a trial court judgment designating his former wife, appellee Karla S. Walkowiak, as primary domiciliary parent of their two daughters and allowing her to move to Houston, Texas, with the girls. He also complains of the trial court's award of child support. We affirm the trial court's custody award to Mrs. Walkowiak; however, we reverse the portion of the trial court judgment setting child support.

FACTS
Mrs. Walkowiak was raised in Houston, Texas; Mr. Walkowiak grew up in Pennsylvania. They met in Houston in the early 1980's when Mr. Walkowiak was there working for Eastern Electric. They married in June 1984. The early years of their marriage were especially difficult. In 1984, Mrs. Walkowiak, then 21 years old, pled guilty to possession of Mandrex with intent to distribute. In 1985, she was hospitalized for a drug overdose. She claimed that she accidentally ingested too much migraine pain medication; according to her husband, it was a suicide attempt.
In about 1985, the couple moved to Pennsylvania when Mr. Walkowiak was transferred; they resided there until 1996 when Mr. Walkowiak's job caused them to move to Monroe, Louisiana. Two daughters were born to them: Amber (DOB June 6, 1988), and Kasey (DOB August 5, 1992). After moving to Monroe, Mrs. Walkowiak, who had previously stayed at home with the children, obtained an administrative job at a pest control company.
The parents separated in July 1997; Mrs. Walkowiak filed for divorce. In October 1997, the mother was named primary domiciliary parent of the children in a consent judgment which specified that any move by the mother from Louisiana would not be a "change in circumstances" sufficient to warrant modification of custody by the father except as to visitation. In November 1997, the parents reconciled.
*857 In April 1998, the parents separated again when the mother and the children moved from the matrimonial home in Ouachita Parish. In May 1998, Mrs. Walkowiak sent her husband a certified letter informing him of her intention to move to Texas and giving him what she anticipated would be their new address. In July 1998, the mother and the two girls moved to Houston where they moved in with the family of a childhood friend of Mrs. Walkowiak and the children were enrolled in school. Mrs. Walkowiak, an employee of the Orkin pest control company, took a lateral transfer in the company from the Monroe office to the company's Houston branch.
On September 3, 1998, Mr. Walkowiak filed the instant suit for divorce and partition of community property. In his petition, Mr. Walkowiak requested joint custody with him being designated as domiciliary parent. He alleged that the mother was habitually unstable and that she attempted suicide in 1985. He also claimed that she was an adulteress and a drug addict who had a 1984 drug conviction. He requested that she be enjoined from moving the children from Ouachita Parish; that request was granted pending a hearing.
Eight days later, the mother filed an ex parte motion for return of the children in which she asserted that the father had omitted pertinent facts from his petition. She alleged that Mr. Walkowiak entered into a written agreement with her that he would take the girls on a trip to Dallas from September 5 to 7 and that he would not keep them longer than that. She accused him of kidnapping the girls and filing a petition which wrongfully inferred that he had custody of the girls in Ouachita Parish. The court vacated its prior order enjoining the mother from taking the girls back to their home in Texas and awarded the mother temporary custody.
On October 7, 1998, Mrs. Walkowiak filed a rule for alimony pendente lite and child support. On December 17, 1998, she filed an answer and reconventional demand in which she sought a divorce. (She later dismissed the alimony pendente lite claim without prejudice.)
Trial was held on October 6 and November 13, 1998. By written reasons rendered on December 18, 1998, the trial court awarded joint custody with the mother being named primary domiciliary parent. The court noted that neither parent had any relatives or other ties to Ouachita Parish and that each worked for a nationwide company. The court noted the father's contentions that the mother was morally unfit to have custody. It also considered the mother's testimony that while she had engaged in an adulterous relationship, it had had no effect upon the children. The court found that there was no evidence that the children were exposed to or harmed by this affair. As to the allegations of drug use, the mother admitted that both she and the father had used drugs 10 to 15 years before; however, she denied recent drug use. She admitted using diet pills but stated that it was at the insistence of Mr. Walkowiak who wanted her to lose weight. (She testified at trial that she stopped taking the diet pills after the father made an issue of them.) The court noted that the father had not been "idle" during the separation, having embarked upon a relationship with a woman named Theresa Semmes.
In its written opinion, the court candidly stated that at the first hearing, it had the impression that the father was the more stable parent. However, the court stated that its opinion changed at the second hearing; it observed that a "defining moment" in the case was when the father was unable to answer the court's questions about a $3,000 loan he made to his paramour in light in his failure to pay child support since August 15, 1998.[1] In the *858 court's opinion, this communicated that "at least, at that given moment, plaintiff placed the interest of Ms. Semmes over that of his children."
The court denied the mother's claim for interim spousal support. It awarded child support of $897.31 per month, retroactive to October 7, 1998. In its written reasons for judgment, the trial court stated that this amount was calculated under the guidelines based upon a finding that the father's gross monthly income was $4,400 and the mother's gross monthly income was $1,641.20. Judgment was signed on January 22, 1999.
The father appealed.

CUSTODY

Law
The relocating parent has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child. La. R.S. 9:355.13.[2]
If the issue of relocation is presented at the initial hearing to determine custody of and visitation with a child, the court shall apply the factors set forth in La. R.S. 9:355.12 in making its initial determination. La. R.S. 9:355.15.
La. R.S. 9:355.12 requires the trial court to consider the following factors:
(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child's life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child's preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.

*859 (6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) Any other factors affecting the best interest of the child.
In a child custody case, the determination of the trial judge will not be disturbed absent a clear showing of abuse of discretion. Draper v. Draper, 556 So.2d 210 (La.App. 2d Cir.1990); Wyatt v. White, 626 So.2d 816 (La.App. 2d Cir.1993). An appellate court is required to extend great weight to the factual conclusions of trial courts which are based on reasonable evaluations of credibility and reasonable inferences of fact. Rosell v. ESCO, 549 So.2d 840 (La.1989).

Discussion
At the time of trial, the children were 10 and 6 years old. Both girls were good students making excellent grades in their new school in Texas. They were attending school in the best rated school district in the general Houston area. The older girl was enrolled in her school's gifted and talented program; the younger one was involved in cheerleading.
The testimony demonstrates that the Walkowiak family only moved to Louisiana in 1996 as the result of the father's job transfer. (They previously lived in Pennsylvania, also due to the father's job.) Neither parent had any immediate family or other ties to Ouachita Parish, Louisiana. The mother was originally from Texas. Following the breakup of the marriage in early 1998, she desired to move back to her home state to an area near Houston where she had close, lifelong friends who could provide emotional and financial support as she rebuilt her lifeand the children'sfollowing the dissolution of the marriage.[3] In particular, she had a childhood friend who was like a sister to her and who was her younger child's godmother. This friend and her husband invited Mrs. Walkowiak and her daughters to temporarily move in with their family while she got on her feet financially. Mrs. Walkowiak had her own bedroom and her daughters shared a bedroom in this family's large four-bedroom house with a swimming pool. At the time of trial, they were still living with this family while Mrs. Walkowiak saved money to establish them in a residence of their own. There is no credible evidence that the mother sought to remove the children to Texas in order to interfere with the father's relationship with them.
In considering the factors of La. R.S. 9:355.12, the record indicates that while the parents were together, the mother was the primary caregiver of the children. In the time period after the parents physically separated but prior to the move to Texas, the children resided with the mother; the testimony of the mother demonstrates that the father failed to visit or communicate with them on a regular basis.
The article also provides for consideration of any other factors affecting the best interest of the children. The father raises the issue of the mother's alleged immorality, specifically drug use and promiscuity. However, the mother testified that any illegal drug usage on her part occurred prior to the birth of the children and in conjunction with the father's own usage. As to her use of diet pills, she testified that she had begun taking them at the father's urging and that she had discontinued them since the father raised their usage in the instant proceedings. The trial court made a credibility determination and obviously accepted the mother's *860 account; based on this record, we find no manifest error in this conclusion.
As to the mother's adultery, she testifiedand the trial court foundthat the affair was conducted discreetly, that the children were not exposed to or harmed by it, and that she had terminated the relationship. Again we find no manifest error.
The father attempted to cast himself as the morally superior parent. In support of this contention, he touted his weekly Baptist church attendance with his paramour, Ms. Semmes. However, the father's position is belied by several facts, most notably his own relationship with Ms. Semmes. At the time of trial, both were still married to other persons and, by own their admissions, had not seriously contemplated marriage to each other. While both testified they did not live together, they both admitted that Ms. Semmes frequently stayed at the father's house overnight. Additionally, Mr. Walkowiak's own testimony demonstrated that he met at least one other woman at a bar and took her home to engage in sexual intercourse.
We note that the trial court was obviously concerned with the father's relationship with Ms. Semmes, a woman whose background was more troubling than the one Mr. Walkowiak accused his wife of having. Married three times, Ms. Semmes had three minor children, each by a different father and only one of whom was fathered by her husband. At the time of trial, only one of her own children resided with her. In 1993, the father of her youngest illegitimate child had won sole custody of that child by presenting overwhelming evidence of bizarre, dissolute and frequently violent conduct on Ms. Semmes' part, much of it apparently alcohol-related.[4] At the time of trial in the instant matter, her alcohol problems were obviously still ongoing as she had just been placed on probation for DWI.[5] Ms. Semmes had also undergone drug rehabilitation sometime after losing custody of her child in 1993 due to her addiction to pain pills which she had obtained from friends.
Mr. Walkowiak testified that he opposed the relocation of the children to Texas because he believed that Monroe was a better place to live. Although Mrs. Walkowiak had suggested that her husband consider a transfer to Houston, where his company had an office and where he had in fact previously worked, he stated that he did not "feel like living in Houston" at that time. (He had been employed by the same company for 22 years.) Also, he testified that when he was transferred to Monroe, he gave his company a five-year commitment to stay there. He did not believe that due to the company's current situation, he could ask for a transfer at that time.[6]
Based upon the record before us, we find no manifest error in the trial court's decision to designate Mrs. Walkowiak as the primary domiciliary parent and to allow her to relocate with the children to Texas. The girls' connection to Louisiana was not strong, and it was in their best interest to remain in their mother's primary care as she moved back to her home state.

CHILD SUPPORT
The father contends that the trial court erred in awarding child support *861 where the record contained insufficient evidence to establish the mother's income. We agree.
Our review of the record reveals that the mother's monthly income was not adequately adduced at trial. The only evidence pertaining to her finances was the statement of her friend Pam Wiles that she knew that Mrs. Walkowiak earned "like $9.75 an hour." In her own testimony, Mrs. Walkowiak made reference to the days and hours she worked. Her normal work hours were 8:00 a.m. to 5:00 p.m. on weekdays. She also testified that she worked until 7:00 p.m. on some days and that she worked some Saturdays, from 7:00 to 12:00 or 8:00 to 12:00. However, it appeared that the Saturday work and the extra weekday hours were to make up lost hours, such as the time she spent in court on the instant matter.
Furthermore, the record indicates that, due to time constraints, the parties did not intend to elicit information pertaining to child support at the hearing, which was to deal with custody. In particular, we note the following exchanges during the court proceedings on November 13, 1998:
[During Mr. Walkowiak's testimony after Mr. Underwood, Mrs. Walkowiak's counsel, questioned him about his income]
By Mr. Loomis: ... Are we going into expanding this hearing today or are we going to stick with trying to get done what we were trying to do last time?
By Mr. Underwood: Your Honor, part of our rule was, the last filed rule was for child support. And we did sign an agreement we would hear all the rules we could today. I think the child support would take up very little of the Court's time. It's just figures.
By Mr. Loomis: May I respond, your Honor? We were under a mandated Code of Civil Procedure article that said that a hearing in this matter had to occur within 15 days. And we run this 15 day hearing, if we expand it to cover everything else, we're not going to, I guess, finish today that 15 day hearing mandate. You know, I don't mean to be difficult, but, if we just keep expanding the hearing, this is going to get away from draining the original swamp we were trying to drain.
By the Court: Well, if it's going to add no more than five minutes to it.
By Mr. Loomis: It's not going to add five minutes. It's going to add hours of questioning [Mrs. Walkowiak]. When I had her up here I didn't go into her wages and work and all of that.
By the Court: On the child support?
By Mr. Loomis: No. I didn't go into all that. We were trying to drain the swamp of can she have custody and take them off to Texas and we were needing to have a 15 day hearing on that subject matter. And that order got signed long, long ago and we're still not getting through that little 15 day hearing that the Code of Civil Procedure [3945] calls for.
By the Court: Let me put it this way. If we have time later this afternoon for child support, we'll take it up. Otherwise, let's keep focused on the issue of custody.
[At the conclusion of Mr. Walkowiak's testimony]
By Mr. Loomis: ... And at that point we would rest on the understanding that we're not into anything but the original 15 day hearing.
By the Court: That's all right, Mr. Loomis. I understand.
By Mr. Loomis: All right. Cause I sure would ask a ton more questions.
[At the conclusion of Mrs. Wiles' testimony after her statement about Mrs. Walkowiak's per hour income]
By Mr. Underwood: Judge, we're not going into the finances.
By the Court: Yeah, we're not going into the financial end of this thing.
Given the inadequate information in the record and the above quoted statements *862 by counsel and the trial judge, we find that the trial court erred in setting child support. Consequently, we reverse that portion of the trial court judgment and remand for further proceedings.

CONCLUSION
The portion of the trial court judgment awarding custody of the children to the mother and allowing her to move with the children is affirmed. The child support award is reversed; we remand the case to the trial court for further proceedings on this issue.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] Mr. Walkowiak testified that he had stopped sending his wife child support because he felt she was not spending it on the children. He also testified that it had been a financial hardship on him to pay what child support he had sent. Yet he conceded that he had loaned Ms. Semmes $3,000 for a car since he filed the instant suit.
[2] At the conclusion of the trial court hearing, counsel for the father stated that the parties had agreed that the relocation statute, La. R.S. 9:355.1, et seq., was not applicable but he was unable to recall on what basis they had arrived at that conclusion. We note that in enacting the statute, the legislature provided that it would not affect any case which on August 15, 1997 "is being litigated or appealed in or to any court of this state wherein the custody of a child is at issue due to the relocation of a party; however, any subsequent relocation by a party after final disposition of such litigation shall be governed" by the act. See Stanley v. Stanley, 98-465 (La. App. 3d Cir.10/21/98), 720 So.2d 740. The petition for divorce and custody at issue here was not filed until September 1998, the actual move to Texas having occurred in July 1998. Although there was an earlier proceeding arising from a different petition for divorce filed in July 1997, the parties reconciled thereafter. The legal effect of reconciliation was to terminate the cause of action for divorce, including any child custody orders. See La. C.C. art. 104; Dooley v. Dooley, 443 So.2d 630 (La.App. 3d Cir.1983), writ denied, 444 So.2d 1215 (La.1984). Thus, we find that the statute is applicable to the instant case.

The father argues that the applicable law is found in Ramos v. Ramos, 97-143 (La.App. 5th Cir. 6/2/97), 697 So.2d 280, writ denied, 97-1770 (La.9/19/97), 701 So.2d 176, which required that the relocating parent show: (1) that there is good reason for the move, and (2) that the move is in the child's best interests. The trial court found the differences in facts made Ramos inapplicable to the instant case. We agree. In Ramos, the primary reason the court found relocation was not in the child's best interest was his strong, extended family ties to Louisiana. Here, we have no such reason.
[3] We note that the eventuality of such a move was plainly contemplated by the parties as the consent decree in the 1997 divorce proceedings specifically provided that an out-of-state move by the mother would not be a "change of circumstance" for custody modification purposes.
[4] According to the written reasons for judgment in that case, Ms. Semmes admitted to past drug usage which included cocaine, marijuana and ecstasy.
[5] Mr. Walkowiak admitted that he had allowed her to drive his children to school during the week he had custody of the girls; however, he could not say whether she had a valid driver's license.
[6] In her brief, Mrs. Walkowiak asserted that Mr. Walkowiakand Ms. Semmeshad in fact moved to Houston since the rendition of the trial court judgment. However, at oral argument, counsel for Mr. Walkowiak declined to confirm or deny this statement. While confirmation of this information might have arguably rendered the relocation issue moot, we give the matter no weight and review only what is in the record before us.