767 So.2d 887 (2000)
Janelle Schonekas BRISBOIS
v.
Keith Joseph BRISBOIS.
No. 00-CA-203.
Court of Appeal of Louisiana, Fifth Circuit.
August 29, 2000.
*888 Marc D. Winsberg, Metairie, Louisiana, Attorney for Plaintiff/Appellant.
Pat M. Franz, Metairie, Louisiana, Attorney for Defendant/Appellee.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
DALEY, Judge.
Janelle Brisbois Wheat appeals the trial court's denial of her Rule for Relocation Authority. She sought court approval to relocate to the State of Michigan with her minor child, Courtney. Mr. Keith Brisbois, the father of Courtney, petitioned the court to be awarded primary custody of Courtney if the relocation was disallowed. The trial court denied Mrs. Wheat's Rule and granted Mr. Brisbois primary (joint) custody of Courtney. We affirm.
Wheat and Brisbois were divorced on March 9, 1998, after approximately five years of marriage. They had one child, Courtney, born on March 31, 1994. Following the divorce, the trial court awarded joint custody, and Janelle Brisbois was designated domiciliary parent, with visitation to Keith. Janelle subsequently married Myrle Wheat, with whom she has two children, ages one year old and six weeks old at the time of trial.[1] Mrs. Wheat filed her Rule after she and Mr. Wheat decided to relocate to Michigan where Mr. Wheat had secured a job at a nuclear power plant.
*889 After a hearing, wherein the judge heard testimony from the parties, Mr. Wheat, Brisbois's parents (the paternal grandparents), and Elliot Levine, a social worker, the trial judge denied Mrs. Wheat's Rule for Relocation Authority and granted Mr. Brisbois's Motion to Modify Custody, designating Mr. Brisbois as Courtney's domiciliary parent. This appeal follows.
Mrs. Wheat argues that the trial court erred in discounting the only expert testimony offered, which came from Elliot Levine, a clinical social worker who interviewed Mr. and Mrs. Wheat and Courtney.[2] Based upon this interview, he found Courtney's relationship with her nuclear family (Mrs. Wheat and her siblings) to be of primary importance, and found that it was in the best interest of the child to be allowed to relocate to Michigan with her nuclear family.

Law
§ 355.12. Factors to determine contested relocation
In reaching its decision regarding a proposed relocation, the court shall consider the following factors:
(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child's life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child's preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) Any other factors affecting the best interest of the child.
The testimony highlighted several facts. At the time of trial, Courtney was five years old, her sister Candis was 10, and her younger siblings were one year old and six weeks old. Courtney's first home was with Keith's parents in Destrehan. While Janelle was pregnant with Courtney and until she was about six months old, they lived with Keith's parents. Courtney's grandmother, Keith's mother, continued to provide day care until Courtney was enrolled in outside day care. The record showed that Courtney's maternal grandparents, Janelle's parents, live in Gretna, but there was no testimony about their relationship with Courtney.
Mrs. Wheat testified that she stays home with her four children and cares for Courtney's needs 24 hours a day, unless Courtney is visiting her father. The current visitation schedule gives Keith two consecutive weekends, from Thursday afternoon until Sunday, with Courtney, to accommodate his offshore schedule (14 on, 14 off). Keith also has summer and alternate holiday visitation. The paternal grandparents also exercised regular visitation on certain Sundays.
Mr. Brisbois testified that he is a paramedic. He currently works offshore, but *890 has lined up a land based job with regular hours if he were awarded custody of Courtney. He currently lives in a two bedroom townhouse with plenty of room for Courtney, and he cooks. Mr. Brisbois agreed that if he were awarded custody, Courtney could stay involved in her current extracurricular activities, such as t-ball. If he were awarded custody, Mr. Brisbois said that he would make sure Mrs. Wheat got all of her visitation, and that Courtney would call her on a regular basis. He also agreed that Courtney could see her mother whenever she returned to Louisiana to visit.
Mr. Brisbois said that while Courtney was a baby, he worked shift work, and, therefore, was available much of the time to care for Courtney. He denied that Mrs. Wheat was her primary caretaker in that time frame. Since the divorce, he has asked for as much visitation as his ex-wife would allow.
Mr. Brisbois testified regarding a claim he made with the Office of Child Services, after he saw marks on Courtney's legs that the child reported were caused by Mr. Wheat's corporal punishment of her with a switch. Keith prefers to discipline Courtney with "time-outs." OCS conducted an investigation of this incident. The records of the investigation were subpoenaed and brought to court by the OCS child protection worker, but not considered by the court in this decision.
Mr. Brisbois testified that he takes Courtney to mass every Sunday he has her, and that she has been baptized and reared in the Catholic faith until his ex-wife remarried Mr. Wheat and converted to Mormonism, to which he objects.
Mrs. Wheat testified that Courtney idolizes her big sister Candis, and loves her two babies. She said that Courtney is well adjusted and does well in school. She confirmed that OCS inquired about the corporal punishment incident, but thinks the investigation was dropped.
Elliot Levine, a clinical social worker, interviewed Mr. and Mrs. Wheat, Courtney and her sister Candis, for about 1½2 hours. He took a history, from the Wheats, of the circumstances of their marriage. He asked for "negatives" and did not receive any negative information about Mr. Brisbois. The Wheats did report the incident involving the Office of Child Services.
Mr. Levine interviewed Courtney with Candis present in the room. Courtney indicated a very loving relationship with both her father and grandfather. He also observed Courtney and Candis playing while he interviewed Mr. and Mrs. Wheat, and got the impression of a very close relationship between them, and between the four siblings themselves.
Mr. Levine agreed that any incident involving OCS is significant, but he did not read the complaint filed with that office. Since Courtney was not removed from the home, he didn't investigate the incident further, since it was his experience that had Courtney been at risk, she would have been removed from the home.
Mr. Levine said that Courtney would miss her father and grandparents terribly if she moved, and he did not recommend any reduction of their current visitation. He felt that it was better for Courtney to remain with her mother, because her mother was available 30 days per month, whereas Keith's current job only gave him 14 days per month with Courtney. Mr. Levine admitted that if Keith had a different work schedule, his analysis would be different. But, considering the age of the child and the importance of her nuclear family unit, he felt he would make the same evaluation even if the father's job schedule changed.
On cross, Mr. Levine said that he felt that Mrs. Wheat would move to Michigan no matter what the outcome of the relocation hearing, but he didn't specifically ask her. Mr. Levine also admitted that he never spoke with Courtney alone, nor did *891 he observe Courtney with her father and grandparents.
Mrs. Wheat testified that they had leased a home in Michigan. She stated that she was moving to Michigan regardless of the outcome of the hearing. Mrs. Wheat also said that Keith's mother sat for Courtney whenever they needed someone outside of school times. She also agreed that most of her and Keith's relatives lived in the State of Louisiana.
Courtney's grandparents, Mr. and Mrs. Brisbois, testified that they are close to Courtney, and that Keith and Janelle lived with them when she was a baby. Mr. Brisbois said that Keith and Courtney's relationship was very loving. Mrs. Brisbois testified that she kept Courtney five days a week until she was three years old. Currently, they have her on certain Sundays for grandparents' visitation. Sometimes Courtney sleeps over when Keith has her for visitation, because Courtney likes to accompany her grandmother to the beauty shop the next morning. Mrs. Brisbois testified that they have four grandchildren and five great grandchildren, all of whom live in the area and whom they keep frequently.
The judge spoke with Courtney in chambers.
On the second day of the hearing, Mr. Wheat testified. He has four children from a prior marriage. He had been employed at an Entergy nuclear power plant until he was laid off due to cutbacks. He is a nuclear instrument technician, which is a very specialized position, requiring him to look out of State for a new job. He felt the job in Michigan was a good one that would allow him to better provide for his family. He and his wife had investigated the area and schools and were satisfied and pleased.
Wheat testified that he is very involved with his family. He cooks, takes turns with chores, and helps with the children. He is the spiritual leader at his church, the Church of Jesus Christ of Latter Day Saints. Mr. Wheat said that Mrs. Wheat is now a member of the Mormon church, baptized by him, and that they plan to raise all the children Mormon. He said that he and Courtney have a very loving relationship, and that Courtney and Candis get along very well, and that Courtney loves her little siblings very much. On cross, Mr. Wheat admitted that his former wife had charged him with domestic abuse, and that he had one prior DWI arrest in 1994. At the time of this hearing, he was 36 years old and Janelle was 32.

Analysis
Louisiana jurisprudence provides that a parent who had joint custody of a child, and who wants to remove the child from the court's jurisdiction, must show: 1) that there is good reason for the move; and 2) that the move is in the child's best interest. Ramos v. Ramos, 97-143 (La. App. 5 Cir. 6/2/97), 697 So.2d 280, citing Pittman v. Pittman, 94-952 (La.App. 5 Cir. 3/15/95), 653 So.2d 1211; LSA-R.S. 9:355.13.
In considering the evidence and explaining his ruling, the judge conducted an extensive oral review of the mandatory criteria[3] in LSA-R.S. 9:355.12. The trial court found, and it is apparent, that the relocation request was made in good faith. However, the trial court found that it was not in Courtney's best interest to permit the relocation.
Regarding Courtney's relationship with each of her parents and the extended family, the trial judge was cognizant that Mrs. Wheat was with the child more than 50% of the time. However, he also recognized that Keith's mother was Courtney's primary caretaker immediately after her birth, and that Keith and the paternal grandparents have remained intimately involved in her life. He also noted that all her extended family lived in Louisiana.
*892 Regarding the second criterion, the judge found that Courtney was a very precocious five year old and consequently was at a good age to adapt to new situations, going or staying. He considered the child's fear of losing contact with her father juxtaposed against her wanting to be with her mother and siblings.
The judge expressed his concerns, in preliminary remarks, about the feasibility of preserving Courtney's relationship with the non-relocating parent (criterion No. 3). Logistically, he found that the great distance between Louisiana and Michigan would be a factor. Regarding criterion No. 6, the trial court found the school systems in Michigan comparable to the St. Charles Parish schools, which are also high quality. He considered the family finances of each household, but didn't consider them a major factor because Mr. Wheat's salary in Michigan was comparable to his old salary here. The trial court acknowledged the legitimacy of the relocation request for Mr. Wheat's job in reviewing criterion No. 7.
The judge had the most concern about criterion No. 5. He felt that Mrs. Wheat displayed a consistent pattern of trying to thwart Courtney's relationship with her father. He was convinced that Janelle would not nurture Courtney's relationship with her father if she was allowed to relocate. He felt unsettled about Mrs. Wheat, due to his concern about the pattern of "unconscionable" meanness he saw her display towards Mr. Brisbois. He also noted that he felt Mrs. Wheat misled the Court factually in the various proceedings. He was also unsettled about Mr. Wheat. The judge considered him authoritative, strong-willed, and argumentative. The prior allegation of domestic abuse concerned him, as did Wheat's prior DWI arrest, and Wheat's admission that he had used a switch on Courtney. He was also concerned about Courtney's religious upbringing and how the Wheats differed with Mr. Brisbois on this issue.
The trial judge ruled that, considering all the evidence in light of the criteria in LSA-R.S. 9:355.12, the best place for Courtney to be, if her mother left Louisiana, was with her father, recognizing Keith's situation, coupled with Courtney's strong relationship to her paternal grandparents. The court clearly made a credibility determination of the parties' veracity, and based upon the record, we cannot say he erred. The court emphasized that a very important factor was Courtney's strong relationship with her father and grandparents, one that he felt would not be fostered by Mrs. Wheat if she were allowed to relocate, especially in light of the great distance between Louisiana and Michigan. Other courts have recognized the paramount importance of a child's relationship with the non-relocating parent and the relocation's effect on this relationship. See Ramos v. Ramos, supra; also see Franz v. Franz, 98-3045 (La.App. 4 Cir. 6/16/99), 737 So.2d 943.
This case can be contrasted with Walkowiak v. Walkowiak, 32,615 (La.App. 2 Cir. 12/8/99), 749 So.2d 855, wherein the trial court allowed the child's relocation. In that case, the trial court found that the children's connection to Louisiana was not strong, and that following the divorce, the mother was the primary caretaker. The evidence also showed that the father failed to visit or communicate with the children on a regular basis.
The record demonstrates that Keith Brisbois is a dedicated and active father who sees Courtney as much as he can, and that Courtney has enjoyed a strong and important relationship with him and her paternal grandparents since her birth. Considering the entire record, we cannot say that the trial court abused its discretion in arriving at the conclusion that Courtney's best interests would be served by a denial of the Rule to Relocate. There exists ample testimony and evidence in the record to support the trial court's conclusions.

*893 Expert Testimony
Janelle argues on appeal that the trial court erred in disregarding the testimony of the social worker Elliot Levine. In Ramos v. Ramos, supra, this court held:
After weighing and evaluating medical and lay testimony, the trial court may accept or reject the opinion expressed by any medical expert. The weight which is to be given expert testimony is dependent upon the professional qualifications and experience of the expert and the facts upon which the opinion is based. The trial judge also has the discretion to substitute his common sense and judgment when such a substitution appears warranted upon the record as a whole [citations omitted].
The "best interest of the child" determination remains within the exclusive province of the trial court. Ramos v. Ramos at 284. Our review of the record shows that the trial court did consider Mr. Levine's opinions. It is also clear that Mr. Levine did not observe Courtney with her father and grandparents, and did not interview them, which rendered his analysis of Courtney's best interest one-sided and incomplete. The trial judge has the discretion to accept or reject expert testimony. He did not abuse his discretion in reaching a conclusion that differed from Mrs. Wheat's expert witness's conclusion, especially considering that this expert was not given the opportunity to conduct a thorough observation of Courtney with both parents.
It is apparent from this record that the trial judge conducted a very thorough and conscientious review of the evidence. While this court may have decided the matter differently, we are not called upon to review this case de novo and make a custody decision. In a child custody case, the determination of the trial court will not be disturbed absent a clear showing of abuse of discretion. Walkowiak v. Walkowiak, supra. The trial judge did not abuse his discretion in this matter.
AFFIRMED.
NOTES
[1] Mrs. Wheat also has a 10 year old daughter, Candis, from a prior marriage, who lives with her, Wheat, and their children.
[2] Mr. Levine has a bachelor's degree in social work.
[3] The judge did not consider criterion No. 4, expressly due to Courtney's young age.